Filed
File Date: 5/20/2022 3:32 PM
Grafton Superior Court
E-Filed Document

STATE OF NEW HAMPSHIRE

GRAFTON, SS                                                              SUPERIOR COURT

Case No.  ___215-2022-CV-00127_____

Ida Maria Gobbini,

Plaintiff-Respondent,

-v-

Trustees of Dartmouth College,

Defendant-Petitioner.

---

**PETITION FOR REMOVAL TO SUPERIOR COURT AND REQUEST FOR JURY TRIAL PURSUANT TO RSA 354-A:21-a**

---

Defendant-Petitioner Trustees of Dartmouth College ("Dartmouth" or "Defendant"), by and through the undersigned counsel, hereby removes the Human Rights Commission Charge of Discrimination filed against it by Plaintiff-Respondent Ida Maria Gobbini, Ph.D. ("Plaintiff") to this Court for pretrial proceedings and a jury trial pursuant to RSA 354-A:21-a.

1.        Plaintiff filed a Charge of Discrimination against Dartmouth with the New Hampshire Commission for Human Rights ("Commission") on or about October 30, 2018, together with a First Supplement to her Charge of Discrimination (dated April 5, 2019) and a Second Supplement to her Charge of Discrimination (dated November 12, 2019). Plaintiff alleged, *inter alia*, that Dartmouth's decision to deny her tenure amounted to discrimination on the basis of sex and retaliation in violation of RSA 354-A and Title VII of the Civil Rights Act of 1964. A copy of the Charge of Discrimination together with both supplements thereto, is

attached as **Exhibit A**. Dartmouth properly and timely raised numerous defenses below, and denies all claims of unlawful discrimination and retaliation made in those documents. The Investigating Commission issued a finding of "probable cause" on or about May 18, 2022. This preliminary finding is not a determination that discrimination or retaliation occurred; rather, it represents a determination by the Investigating Commissioner that a reasonable basis existed to support bringing additional proceedings in the nature of a public hearing before the full Human Rights Commission. *See* RSA 354-A:21-a, I; BLACK'S LAW DICT. 1454 (11th ed. 2019).

2.      No public hearing has been commenced.

3.      Dartmouth hereby exercises its right to have pretrial proceedings and a jury trial in this Court in accordance with RSA 354:21-a, I, and has provided or will provide appropriate statutory notice to the Commission of the filing of this matter pursuant to RSA 354-a:21, II.

4.      A copy of this Notice has been provided to Plaintiff through her counsel and to the Commission.

WHEREFORE, Dartmouth requests that this Honorable Court:

A.      Schedule this matter for pretrial proceedings and a jury trial in accordance with RSA 354-A:21-a; and

B.      Grant it such other and further relief as this Court deems just and equitable.

Respectfully submitted,

THE TRUSTEES OF DARTMOUTH COLLEGE

By its attorneys,

DEVINE, MILLIMET & BRANCH,
PROFESSIONAL ASSOCIATION

Date: May 20, 2022         By:      */s/ Pierre A. Chabot*____
                                    Pierre A. Chabot, Esquire (Bar # 17606)
                                    111 Amherst Street
                                    Manchester, NH 03101
                                    (603) 669-1000
                                    pchabot@devinemillimet.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of Petition to Remove to Superior Court upon Attorneys Lauren Simon Irwin and Alan Kabat, counsel for Plaintiff in this matter, by sending or causing the same to be sent by email to each of them.

By: */s/Pierre A. Chabot*
    Pierre A. Chabot

3

# Exhibit A

Combined Charge of Discrimination and Supplements

*Ida Maria Gobbini v. Trustees of Dartmouth College*

No. _____

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | EG(R) 0031-19<br>16D-2019-00040 |

**New Hampshire Commission for Human Rights** and EEOC

_State or local Agency, if any_

| Name (indicate Mr., Ms., Mrs.)<br>**Dr. Maria Ida Gobbini** | Home Phone (Incl. Area Code)<br>**(609) 933-4422** | Date of Birth<br>JAN 16, 1968 |
|---|---|---|
| Street Address                                    City, State and ZIP Code<br>**3 North Balch Street, Hanover, New Hampshire 03755** | | COPY |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**Dartmouth College** | No. Employees, Members<br>**3,000** | Phone No. (Include Area Code)<br>**(603) 646-3411** |
|---|---|---|
| Street Address                         City, State and ZIP Code<br>**Dartmouth College, Office of Human Resources, 7 Lebanon Street, Suite 203, Hanover, New Hampshire 03755** | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Street Address                         City, State and ZIP Code | | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☒ OTHER (Specify)  **RSA 354-A**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **01/14/13**    Latest **05/13/18**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see Attachment A.

**RECEIVED**

OCT 30 2018

NH COMMISSION
FOR HUMAN RIGHTS

State of New Hampshire, Grafton County
Signed or attested before me on 10/26/2018
by _Maria Ida Gobbini_

_Sue Girouard_

Sue E.B. Girouard - NH Notary Public
MY commission expires Sept. 17, 2019

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

OCT 26 2018     _Maria Ida Gobbini_
Date     Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

_Maria Ida Gobbini_

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)
Oct 26 2018

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | EG(R) 0031-19 |
| | ☐ EEOC | 16D-2019-00040 |

**New Hampshire Commission for Human Rights** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*


State of New Hampshire, Grafton County
Signed or attested before me on 10/26/2018
by Maria Ida Gobbini.

*Sue Girouard*

Sue E.B. Girouard - NH Notary Public
My commission expires: Sept. 17, 2019

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT *Maria Ida Gobbini.* |
| Oct 26 2018   *Maria Ida Gobbini.* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date          Charging Party Signature | Oct 26 2018 |

## Attachment A

1.      I am an Associate Professor in Dartmouth College's Department of Psychological and Brain Sciences (PBS).  I was hired in July 2012, and applied for tenure during the 2017-18 Academic Year.  On May 13, 2018, I was notified that I would be denied tenure in PBS.  I believe that this decision was discriminatory on the basis of my sex (female) and was retaliatory for my having protested prior gender discrimination in the workplace.  Among other evidence of discrimination, my record of published scholarship at the time that I applied for tenure was comparable to or significantly greater than other, male members of PBS who have obtained tenure during the past decade.

2.      During my six years on the tenure track in PBS, I also experienced a number of instances of gender discrimination.  This pattern of discrimination demonstrates that several male faculty members in PBS do not view me as a fully-qualified researcher, but instead view me as a sex object or as less qualified than men.

3.      For example, on January 14, 2013, only a half-year after I entered the tenure track, Dr. David Bucci, who was then the Chair of the Graduate Student Committee and is now the PBS Chair, held a mandatory meeting for all PBS graduate students.  At this meeting, he displayed a slide that he had created by photoshopping my face onto the body of a woman in a bikini holding an alcoholic beverage.  The figure with my face was standing near a swimming pool with my husband, Dr. Jim Haxby (another PBS professor), whose face was photoshopped onto a male body in a speedo.  This incident was deeply humiliating.  Though I complained about this discriminatory treatment to Dr. Jay Hull, who was then the PBS Chair and is now the Associate Dean, no corrective action was taken, and both Dr. Bucci and Dr. Hull subsequently retaliated against me in the evaluation and tenure process.

4.      In the performance evaluation that Dr. Bucci prepared for me in Academic Year 2016-17 (the final evaluation in my tenure file), he included numerous errors, and improperly fixated on my relationship with my husband.  This evidenced his view that I am only at Dartmouth because I am married to Dr. Haxby, not because I am an independently qualified researcher and teacher.  In fact, my research, teaching, and service at Dartmouth is independent from Dr. Haxby's research.  Dr. Peter Tse, a Full Professor in PBS, has also fixated on this relationship.  For example, in the fall of 2016, he opposed my serving on a search committee for a cognitive neuroscience position, alleging that I could not provide an independent opinion

because I am married to Dr. Haxby. Dr. Bucci, as the PBS Chair, subsequently wrote to Dr. Haxby that "the perception is that having Ida on this committee allows you to exert influence," again viewing me as nothing more than an annex to my husband.

5.       As a further example of gender discrimination, Dr. Tse specifically excluded me in connection with a grant on the topic of "Attention," which was recently awarded by NSF. As the leader (PI, or Principal Investigator) on that grant, Dr. Tse invited all of the male junior faculty members in the cognitive neuroscience group to be part of it, while notably failing to invite me, the only female junior faculty member in cognitive neuroscience. His exclusion of me cannot otherwise be explained, since he knew that I was the only junior faculty member with an active program studying and publishing papers on the topic of "Attention." I was, therefore, more qualified than the male junior faculty members in the department to participate on this grant, but was excluded.

6.       When the PBS department voted on my tenure application in February 2018, Dr. Bucci served as the Committee Chair and Dr. Tse participated in the discussion. The department voted to deny me tenure.

7.       I have repeatedly discussed the aforementioned discriminatory behaviors exhibited by Drs. Bucci and Tse with Dr. Jay Hull, initially when he was PBS Chair and more recently in his capacity as Associate Dean. However, Dean Hull has never taken my complaints seriously, and I have come to realize that he shares some of the gender discriminatory prejudices and sexist attitudes that characterize the behavior of a number of male faculty members in PBS. In fact, during a meeting with Dean Hull on April 20, 2018, he asked a number of questions about the male researchers who have worked in my laboratory at Dartmouth, which seemed to imply (falsely) that I was not able to do my own research unless I relied on male students and postdocs. Additional evidence of Dean Hull's bias against me is the fact that he harbors animosity against my husband and is discriminating against me as a way of punishing my husband, which constitutes discrimination on the basis of sex.

8.       As further context, PBS has a long history of gender discrimination, including a recent high-profile case involving sexual misconduct by three senior male faculty members, each of whom was forced to leave Dartmouth earlier this year. In fact, since at least 2002, there have been several gender discrimination complaints made to administrators in PBS and to the Office of the Dean of Faculty, which did not lead to any effective remedial measures or efforts to

protect the careers of female students and faculty. Moreover, after my own tenure denial, several female graduate students in PBS sent a letter to Dean Hull, in which they raised concerns about the overall sexist climate within PBS.

9.      In the past eighteen years, seven women (including me) have been hired as tenure-track faculty in PBS. Of these seven women, six either left or were denied tenure (one of these subsequently received tenure after the department's negative vote was overturned on appeal, but she chose to accept an offer elsewhere because of Dartmouth's treatment of her). In contrast, at least five men have obtained tenure in PBS during the same time period, including Dr. Bucci and Dr. Tse (and only two men were denied tenure). This, combined with the other evidence described above, evidences a discriminatory and sexually hostile environment for women in PBS that has improperly affected my tenure application.

10.     For the reasons stated above, I believe that Dartmouth College has discriminated against me on the basis of my sex, in violation of the New Hampshire Law Against Discrimination and Title VII of the Civil Rights Act of 1964. I would like to cross-file my charge with the U.S. Equal Employment Opportunity Commission.


Oct 26 2018     *[signature]*

State of New Hampshire, Grafton County
Signed or attested before me on 10/26/2018
by  Maria Ida Gobbini

*[signature]*

Sue E.B. Girouard - NH Notary Public
My commission expires: Sept. 17, 2019

APR – 8 2019

STATE OF NEW HAMPSHIRE
NEW HAMPSHIRE HUMAN RIGHTS COMMISSION

Maria Ida Gobbini, M.D.

v.

Trustees of Dartmouth College

Charge No. EG (R ) 0031-19; 16D-2019-00040

## SUPPLEMENT TO CHARGE OF DISCRIMINATION

The Complainant hereby submits a Supplement to her Charge of Discrimination,

docketed on October 30, 2018.  The Supplement is attached hereto as Exhibit A.  Pursuant to the

Order granting Complainant's Assented-To Motion to Temporarily Waive the Verification

Requirement, Ms. Gobbini will have her signature notarized upon her return to the United States.

Respectfully submitted,

MARIA IDA GOBBINI, M.D.
Complainant

By Her Attorneys

UPTON & HATFIELD, LLP

Date:  April 5, 2019                  By:

Lauren S. Irwin (NHBA #10544)
10 Centre Street, PO Box 1090
Concord, NH  03301-1090
(603) 224-7791
lirwin@uptonhatfield.com

and

Alan R. Kabat
Bernabei & Kabat, PLLC
1400 - 16th Street, N.W., Suite 500
Washington, D.C.  20036-2223
(202) 745-1942 (ext. 242):
Kabat@BernabeiPLLC.com

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was forwarded, via first class mail, to Pierre Chabot, Esq.

Date:  April 5, 2019

Lauren S. Irwin

A

**SUPPLEMENT TO ATTACHMENT A – M. Ida Gobbini, M.D. Ph.D.**

On October 26, 2018, I signed the Charge of Discrimination (with Attachment A), which was docketed by the New Hampshire Commission for Human Rights on October 30, 2018. I write to supplement the Charge of Discrimination. Paragraphs 11 to 15, below, are supplements to several paragraphs of the Attachment A. Paragraphs 16 to 19 provide information on events occurring subsequent to the filing of the Charge of Discrimination.

11.     In Paragraph 1 of Attachment A, I stated that I believed the denial of tenure was "discriminatory on the basis of my sex (female) and was retaliatory for my having protested prior gender discrimination in the workplace." I am amending that statement to provide greater specificity – that this decision was in retaliation for both (a) my prior reports of gender discrimination in the workplace, and (b) my support of female students in the department who complained about widespread sexual harassment and gender discrimination in the Department of Psychological and Brain Sciences (PBS), Dartmouth College.

12.     In the last sentence of Paragraph 4 of Attachment A, I alleged that Dr. Bucci's response to my involvement on a search committee was "viewing me as nothing more than an annex to my husband." I am amending that statement to specify that Dr. Bucci's conduct in viewing me as inseparable from my husband constitutes discrimination against me on the basis of my marital status and gender.

13.     In the last sentence of Paragraph 7 of Attachment A, I alleged that Dean Hull's bias against me "constitutes discrimination on the basis of sex." I am amending that statement to specify that Dean Hull's bias against me constitutes discrimination on the basis of sex and on the basis of my marital status.

14.     In Paragraph 9 of Attachment A, I provided some information on the tenure process in PBS over the past eighteen years. I write to provide greater specificity about the tenure process in PBS over the past twenty years: Over the past twenty years, seven women (including me) have been hired as tenure-track faculty in PBS. Of these seven women, only two received tenure, one of whom (Dr. Jennifer Groh) was initially denied tenure by her department in PBS, then successfully got tenure after the Committee Advisory for the President (CAP) overturned the decision, but she left Dartmouth soon thereafter because of the College's poor treatment of her. Of the five remaining women, one was denied tenure (me), one left before a

final decision on her tenure application was made, and three left before applying for tenure because they were discouraged from remaining in PBS. One of three women who left before coming up for tenure, Dr. Abigail Baird, was hired to the PBS tenure track in July 2002. That year, she learned of Dr. Todd Heatherton's (one of the three PBS professors accused of sexually assaulting their students in *Rapuano et al. v. Dartmouth*) groping of female students, and she saw that no action was taken in response to multiple complaints about him. Dr. Baird was on track to obtain tenure, since she had published numerous papers and received funding from NIH. However, several of Dr. Baird's male colleagues in PBS were improperly preoccupied with her private life, which included repeatedly commenting to her and others about their false perceptions of her sexual life and sexual orientation, and even spreading a false rumor that she had engaged in sex with member of a band at a conference – none of which was relevant to her research or teaching. Due to the clearly sexually hostile work environment that she experienced in PBS, Dr. Baird left Dartmouth before going up for tenure. A second junior female faculty member who also left before applying for tenure, Dr. Won-Mok Shim, had childcare responsibilities, and I heard a senior faculty member complain that it was hard for Dr. Shim to do her research. Another senior faculty answered that if she did not have to take care of her child, she could use that time to do more research. In total, only two out of seven women hired in the past twenty years on the PBS tenure track, or 28.5 percent, received tenure, one of whom subsequently left soon thereafter due to the College's poor treatment of her. In contrast, at least five out of seven men, or 66.7 percent, on the PBS tenure track have obtained tenure during the same time period (including Dr. Bucci and Dr. Peter Tse). There were also three additional hires of senior male faculty with tenure in the same period: Drs. Rick Granger, Jim Haxby, and Tor Wager. In contrast, no women were hired as senior faculty members with tenure. These objective quantitative data show that the proportion of male versus female hires who received tenure or were hired with tenure in PBS during the past twenty years is 9:2. This, combined with the other evidence described above, evidences a discriminatory and sexually hostile environment for women in PBS that has improperly affected my tenure application.

15.    In Paragraph 10 of Attachment A, I stated that I believed "that Dartmouth College has discriminated and retaliated against me on the basis of my sex …" I am amending that allegation to add my "marital status" as another basis for the discrimination and retaliation against me, in violation of the New Hampshire Law Against Discrimination and Title VII of the

Civil Rights Act of 1964.

16.     Most recently, on November 15, 2018, seven current and former students in PBS, including a mentee in my laboratory, Vassiki Chauhan, filed a Title IX complaint against Dartmouth in the United States District Court for the District of New Hampshire, *Rapuano et al. v. Trustees of Dartmouth College*, No. 1:18-cv-01070 (D.N.H. Nov. 15, 2018) ("*Rapuano et al. v. Dartmouth*"). Among other claims, the plaintiffs allege that, despite a number of gender discrimination and sexual harassment complaints made to administrators in PBS (including Drs. Bucci and Hull) and the Office of the Dean of Faculty, dating back as early as 2002, the College failed to take corrective action to prevent the recurrence of this discriminatory behavior or to protect the careers of female students and faculty. As a result, the administration perpetuated a sexually hostile work environment in which multiple female PBS students were sexually assaulted, discriminated against, and/or retaliated against by their male professors.

17.     On January 16, 2019, PBS held a faculty meeting to address the allegations involved in *Rapuano et al. v. Dartmouth*. Dartmouth's external counsel facilitated the meeting, during which the attorneys made several false and inappropriate statements about the plaintiffs, including Ms. Chauhan. I believe this meeting was a clear attempt to smear the reputations of these women and to discredit their claims. I further believe that this meeting was held, at least in part, in retaliation for my supporting Ms. Chauhan and the other plaintiffs, whose allegations of widespread gender discrimination in PBS are similar to the allegations that I have made in both my internal and external complaints of gender discrimination and retaliation against Dartmouth, including in my first NHCHR charge docketed on October 30, 2018. Throughout the meeting, Dartmouth's counsel used inflammatory language to intimidate me and other PBS professors – several of whom are likely to be deposed in this lawsuit, to denigrate the reputation and credibility of the students, and to discourage us from supporting the students' position.

18.     Moreover, after the three male PBS professors accused of sexual assault in the lawsuit left Dartmouth, PBS initiated a faculty search for two positions in social psychology. This search resulted in a "short list" of eleven candidates to be interviewed, only two of whom were women; although the list was briefly expanded to include three women, the ultimate result is that two men were hired for these positions. This gender distribution is in no way an accurate distribution of the general population of candidates in the field, thus reflecting PBS's systemic discrimination against women. In fact, women have consistently earned more than half of the

doctoral degrees in psychology for over two decades – 62 percent in 1993, 68 percent in 2002, 75 percent in 2011, and 74 percent in the 2017-18 academic year. *See* American Psychological Association, *The Changing Gender Composition of Psychology*, at 26, Table 3.4 (2017) (https://www.apa.org/pi/women/programs/gender-composition/index.aspx); Garth Fowler, et al., *Women Outnumber Men in Psychology Graduate Programs*, Monitor on Psychology, 49(11): 21 (Dec. 2018) (https://www.apa.org/monitor/2018/12/datapoint.aspx). Women similarly hold the majority of post-doctoral positions in psychology, which are the positions from which new faculty are hired, and Dartmouth's peer institutions (both within the Ivy League and elsewhere) are able to achieve both short lists and junior faculties that better reflect the gender balance in Psychology.

19.     I have recently learned that Dr. Bucci, the PBS Department Chair, has also discriminated against at least two female adjunct faculty members in PBS. Dr. Janine Scheiner, who has been an adjunct for about 25 years, decided that she had no choice but to retire after Dr. Bucci reassigned many of her classes to a male adjunct (without any discussion). Dr. Hull had claimed that the students' evaluations of Dr. Scheiner were negative, contrary to the fact that Dr. Hull had assigned her to teach so many courses in previous years. Dr. Rose Clark, another adjunct, was told by Dr. Bucci that she could no longer share office space with Emeritus Professor George Wolford. However, when Dr. Clark started to pack up her materials, Professor Wolford was very surprised, and told her that he, not Dr. Bucci, would make decisions about the use of his office space. Professor Wolford specifically told Dr. Clark that she did not have to move, so she remains in his office space.

I declare, under penalty of perjury, this 6th day of March, 2019, that the foregoing is true and accurate.

M. Ida Gobbini, M.D. Ph.D.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | |

| New Hampshire Commission for Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Dr. Maria Ida Gobbini** | **(609) 933-4422** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **3 North Balch Street, Hanover, New Hampshire 03755** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Dartmouth College** | **3,000** | **(603) 646-3411** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Dartmouth College, Office of Human Resources, 7 Lebanon Street, Suite 203, Hanover, New Hampshire 03755** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN

[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION

[X] OTHER *(Specify)*  **RSA 354-A**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **01/14/13**   Latest **10/23/19**

[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Please see Attachment A.

Exp. 11/16/21

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |

Nov 5 2019   *(signature)*
Date        Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

Nov 5 2019

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | |

| New Hampshire Commission for Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Please see Attachment A.

$E_{x/.}$ 11/16/21

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Nov 5 2019       *Date*          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* Nov 5 2015 |

**SECOND SUPPLEMENT TO ATTACHMENT A – Ida Gobbini, Ph.D.**

**Paragraphs 20 through 26 are hereby added to Attachment A as follows:**

20.    On October 20, 2019, Dr. Peter Tse, a tenured faculty member in Dartmouth's Department of Psychological and Brain Sciences ("PBS"), who also served on Dr. Gobbini's tenure review committee, sent an email to the entire junior faculty in PBS that specifically blamed Dr. Gobbini (and her husband, Dr. Jim Haxby) for the recent suicide of Dr. David Bucci, former PBS Chair.

21.    Dr. Bucci committed suicide during the week of October 15, 2019, after a life-long battle with severe depression.  Drs. Gobbini and Haxby previously named Dr. Bucci in their NHCHR/EEOC charges as having made sexist remarks about Dr. Gobbini in the workplace, and for having failed to take action when Dr. Gobbini complained about gender discrimination in the workplace.  Dr. Bucci was further named in a recent lawsuit initiated by PBS graduate students – *Rapuano v. Trustees of Dartmouth College* – for having failed to take action when the students complained to him (in his capacity as then-Director of Graduate Studies and then-PBS Chair) about sexual harassment and discrimination by several faculty members in PBS.

22.    Following the news of Dr. Bucci's suicide, Dr. Tse emailed the entire PBS junior faculty, attaching Dr. Gobbini's NHCHR/EEOC charge, Dr. Haxby's NHCHR/EEOC charge (related to Dartmouth's retaliation against him for opposing its discriminatory and retaliatory conduct against Dr. Gobbini), and the purportedly "confidential" report of Dartmouth's internal investigation of Dr. Gobbini's allegations of gender discrimination and retaliation.  Dr. Tse's email stated the following:

> Because of Dave's [Bucci's] suicide, and the importance of having an open, even if painful discussion about how to move forward as a dept., I feel it important that the junior faculty now know about accusations made against Dave that he took very very hard, and that made him extremely angry.  False accusations from the plaintiffs [in *Rapuano*], followed by these second false accusations, were contributing factors to his mental breakdown, in my view.

23.    By "these second false accusations," Dr. Tse was clearly referring to Dr. Gobbini's and Dr. Haxby's legal claims involving Dr. Bucci, given the attachments to his email. These statements are defamatory, and constitute further retaliation against Dr. Gobbini for bringing legal claims against Dartmouth based on its discriminatory and retaliatory denial of her tenure, against Dr. Haxby for opposing this discrimination and retaliation, and against both Drs.

Gobbini and Haxby for filing administrative charges against Dartmouth with the NCHRC and the EEOC.

24.     Dr. Tse's retaliatory statements have seriously damaged Dr. Gobbini's reputation within Dartmouth, and, in particular, among the junior faculty in PBS, who are likely to believe Dr. Tse's accusation that Dr. Gobbini and Dr. Haxby are responsible for Dr. Bucci's suicide.  Dr. Tse's false and retaliatory statements have further caused Dr. Gobbini severe emotional distress.

25.     On October 21, 2019, counsel for Drs. Gobbini and Haxby wrote to Dartmouth and demanded that Dartmouth immediately repudiate Dr. Tse's statements, and further retract them (or order that Dr. Tse retract them), with notification to the entire faculty of PBS, and anyone else to whom Dr. Tse or others may have made or republished these statements.

26.     In response, by letter dated October 23, 2019, Dartmouth's counsel refused to repudiate or retract the retaliatory and defamatory statements.  Instead, Dartmouth's counsel wrongfully accused Drs. Gobbini and Haxby of using Dr. Bucci's suicide to "enhance" their "litigation posture" against Dartmouth.  To the contrary, it is Dr. Tse – and now, Dartmouth – who used the news of Dr. Bucci's tragic passing as an opportunity to defame Drs. Gobbini and Haxby, and attack their litigation positions against Dartmouth, in retaliation for their engaging in protected activity by filing administrative charges against the College.

I declare, under penalty of perjury, this ___5___ day of ~~October~~ Nov, 2019, that the foregoing is true and accurate.

Ida Gobbini, Ph.D.

Exp. 11/16/21